1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                  SOUTHERN DISTRICT OF CALIFORNIA
10

11  MEDIVAS, LLC, a California limited          CASE NO. 10-CV-1001 W (BLM)
    liability company, et. al.
12                                               ORDER GRANTING
13                                               DEFENDANTS' MOTION TO
                                                 REMAND THE FOURTH CAUSE
                                 Plaintiffs,     OF ACTION TO STATE COURT
14            v.                                 FOR LACK OF SUBJECT MATTER
15                                               JURISDICTION [DOC. 44.]
16  MARUBENI CORP., and DOES 1
    through 100,
17
                                 Defendants.
18

19          Pending before this Court is Defendant Marubeni Corporation's motion to

20  remand the fourth cause of action to state court. [Doc. 44.]  Plaintiffs oppose. [Doc.

21  46.]

22          The Court decides the matters on the papers submitted and without oral

23  argument pursuant to Civil Local Rule 7.1(d.1).  For the reasons stated below, the

24  Court **GRANTS** Defendants' motion. [Doc. 44] and **ORDERS** the Fourth Cause of

25  Action remanded to the San Diego Superior Court.

26  //

27  //

28  //

# I.    BACKGROUND

## A.    <u>Factual background.</u>

The following factual background is taken from this Court's previous order.

Marubeni is a Japanese multinational corporation.   Plaintiff MediVas is a biomedical company.  Plaintiffs Kenneth W. Carpenter, Joseph D. Dowling, William G. Turnell , Sachio Okamura, T. Knox Bell, Dari Darabbeigi, Lindy Hartig, William Summer, and Paul Teirstein (collectively, the "Individual Plaintiffs") are managers, employees, and investors of MediVas.

On April 13, 2004, MediVas and Marubeni entered into an unsecured Convertible Note Purchase Agreement (the "Note Purchase Agreement").  (*See Pls.' Notice of Lodging in Support of Remand Mot.* ("Pls.' NOL") Ex. 1 [Doc. 7-4].)   The agreement obligated Marubeni to make advances to MediVas in an aggregate principal amount not to exceed $5 million.   In exchange, MediVas was obligated to make quarterly interest payments, and to pay the principal on the note's maturity date.  The Note Purchase Agreement  also included an arbitration provision providing that "[a]ll disputes and differences which may arise out of or in connection with this Agreement, or the breach thereof . . . shall be submitted to arbitration under the commercial arbitration rules of the International Chamber of Commerce (the "<u>ICC</u>") for final and binding arbitration." (*Id.*, ¶ 10.14.)

In addition to the Note Purchase Agreement, the parties entered into an Agency Agreement, whereby MediVas appointed Marubeni as its exclusive agent in Japan. (*See Pls.' NOL*, Ex. 2.)  The Agency Agreement also contains an arbitration provision.  (*Id.*, ¶ 9.2.)

By June 2004, MediVas borrowed the entire $5 million from Marubeni.  From April 2004 to June 2007, MediVas made all quarterly interest payments.  However, at some point in 2007, MediVas began experiencing cash flow shortages and liquidity problems.   By July 2007, when the principal obligation on the Note Purchase Agreement became due, MediVas' could not afford to pay its daily operating expenses

1    and obligations under the note.  MediVas informed Marubeni of its inability to retire

2    the debt.

3        Meanwhile, as a way to deal with its financial hardship, MediVas began merger

4    discussions with Nastech Pharmaceutical Company, Inc.  By September 2007, MediVas

5    and Nastech drafted an Agreement and Plan of Merger.  In order to complete the

6    merger, Nastech requested that MediVas' lenders consent to the merger.  Marubeni

7    refused and threatened to pursue legal action under the Note Purchase Agreement.

8    Eventually, in order to obtain Marubeni's consent, MediVas agreed to enter into three

9    additional contracts: a Forbearance Agreement, Security Agreement, and Intellectual

10    Property Security Agreement ("IP Security Agreement").

11        On October 10, 2007, MediVas and Marubeni signed the Forbearance

12    Agreement, whereby Marubeni agreed not to exercise any remedies available under the

13    Note Purchase Agreement and promissory note.[1]  (*See Pls.' NOL*, Ex. 3 at ¶ 2.)  In

14    exchange, MediVas' agreed to limit its ability to issue equity (*id.* at ¶ 7), and "to grant

15    [Marubeni] a first priority security interest in all of [MediVas'] assets" (*id.* at ¶ 4).

16        The Security Agreement granted Marubeni "a continuing security interest in and

17    to all right, title, and interest" in MediVas' collateral. (*Pls.' NOL*, Ex. 4 at ¶ 2.1.)

18    Unlike the 2004 agreements, the Security Agreement does not contain an arbitration

19    provision, and instead includes a venue clause providing that state and federal courts

20    in San Diego "will have exclusive jurisdiction to hear and determine any dispute, claim

21    or controversy between or among them concerning the interpretation or enforcement

22    of this Agreement." (*Id.* at ¶ 6.14.)

23        The IP Security Agreement granted Marubeni a security interest in all of its

24    "intellectual property, copyrights, patents, patent applications, trademark, know-how,

25    trade secrets, and related goodwill." (*Pl.'s NOL*, Ex. 5 at p. 1.)  This agreement does not

26    contain an arbitration or venue clause.

27

28

---

[1] MediVas provided Marubeni a promissory note reflecting the $5 million in advances.

Despite executing these contracts, the Nastech merger failed. MediVas alleges the failure was caused by Marubeni's refusal to timely consent to the merger.

In March 2008, MediVas entered into discussions with DSM Biomedical Materials B.V. ("DSM"). By September 2008, DSM had engaged MediVas in discussions for the acquisition of MediVas for a purchase price of between $100-$130 million. MediVas alleges that the Forbearance Agreement, Security Agreement and IP Security Agreement caused the negotiations to degrade into discussions about a license agreement. DSM determined that "MediVas had no options and reduced the license agreement from $16 million to $8 million." (*Compl.*, ¶ 72.) Of the $8 million MediVas was going to receive, MediVas agreed to pay $1 million to Marubeni. Nevertheless, Marubeni refused to consent to the agreement and insisted that DSM pay sufficient funds from the license to Marubeni to completely repay their loan and accrued interest. DSM refused.

On February 11, 2009, MediVas and DSM executed a technology license agreement. Instead of paying MediVas $8 million, DSM reduced the price to $7 million.

**B.    Procedural history.**

On April 28, 2010, MediVas filed this action in the San Diego Superior Court. On May 10, 2010, Marubeni removed the lawsuit to this Court under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. §§ 203–205. MediVas then filed a motion to remand, arguing that this Court lacked subject-matter jurisdiction, and Marubeni filed a motion to compel arbitration. The primary issue underlying the motions was whether the 2007 Forbearance Agreement rescinded the Note Purchase Agreement, thereby rescinding the arbitration provision and requiring litigation to proceed in the San Diego Superior Court.

On February 28, 2011, this Court rejected MediVas' argument that the Forbearance Agreement rescinded the Note Purchase Agreement for, among other reasons, the following:

> [T]he Note Purchase Agreement specifically provides that it "may be amended or supplemented only by a writing that refers explicitly to the this Agreement, . . . and expressly states that it is an amendment to the terms thereof." [Citation omitted.] The Security Agreement's venue provision does not refer to or state that it is amending or supplementing either the Note Purchase Agreement or the arbitration clause.

(2/28/11 Order [Doc. 23], 6:12–17.)  Because MediVas' remand motion was premised on the argument that the Forbearance Agreement was rescinded, the order denied the remand.  Additionally, because MediVas failed to argue that any of the causes of action fell outside the scope of the arbitration provision, the Court ordered all claims to arbitration.[2]

Thereafter, MediVas filed a motion for reconsideration.  In connection with that motion, this Court issued an order instructing the parties' briefs to "take into account this Court's [previous order] finding . . . that the arbitration provision is valid and binds the parties" and thus requested that the parties "discuss each claim in the complaint individually, and identify whether the claim is subject to the arbitration or the venue agreement."  (See 5/31/11 Order [Doc. 32], 5–13.)

In its reconsideration motion, MediVas asserted that although the arbitration provision remained in effect, the venue provision essentially trumped that clause. (See Recon. Mt. [Doc. 33], 1:17–28, 4:9–17.)  In short, although MediVas claimed to acknowledge this Court's previous finding, MediVas continued to disregard the arbitration clause by asserting that none of the claims, including the claim for breach of the Note Purchase Agreement itself, were subject to arbitration.  In light of this position, MediVas failed to provide a meaningful analysis regarding whether any of the causes of action fell within the venue or arbitration clause.  Accordingly, the Court was

---

[2] However, the order denied the motion to compel arbitration as to the Individual Plaintiffs and ordered further briefing regarding whether their claims should be remanded or stayed.  (See Order, 11:24–12:6.)

required to look primarily to MediVas' state-court complaint to attempt to determine whether each cause of action was subject to arbitration or litigation in the San Diego Superior Court.

August 2, 2011, this Court issued an order compelling arbitration of certain causes of action, including the fourth cause of action for fraudulent conveyance/avoidable transfer, and remanding to the San Diego Superior Court those causes of action covered exclusively by the venue provision. (*8/2/11 Order* [Doc. 37], 13:20–14:16.)

On November 25, 2011, the arbitral tribunal issued its partial award. In so doing, the tribunal declined to exercise jurisdiction over the fourth cause of action. Marubeni now seeks to remand that cause of action to state court. MediVas opposes.

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction." <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution or a statute, which is not to be expanded by judicial decree." <u>Id.</u> (internal citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." <u>Id.</u> (internal citations omitted); <u>see also</u> <u>Abrego Abrego v. The Dow Chem. Co.</u>, 443 F.3d 676, 684 (9th Cir. 2006).

Consistent with the limited jurisdiction of federal courts, the removal statute is strictly construed against removal jurisdiction. <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992); <u>see also</u> <u>Sygenta Crop Prot. v. Henson</u>, 537 U.S. 28, 32 (2002); <u>O'Halloran v. Univ. of Wash.</u>, 856 F.2d 1375, 1380 (9th Cir. 1988). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." <u>Gaus</u>, 980 F.2d at 566; <u>see also</u> <u>Nishimoto v. Federman-Bachrach & Assoc.</u>, 903 F.2d 709, 712 n.3 (9th Cir. 1990);

1    <u>O'Halloran</u>, 856 F.2d at 1380.  "Federal jurisdiction must be rejected if there is any

2    doubt as to the right of removal in the first instance."  <u>Gaus</u>, 980 F.2d at 566.

3

4    **III.    DISCUSSION**

5         Relying on the arbitration provision in the 2004 Note Purchase Agreement,

6    Marubeni removed this case under the Convention, for which 9 U.S.C. §§ 203–205

7    provides jurisdiction.  Marubeni now argues that having ordered the fourth cause of

8    action to arbitration, "no basis [now] exists for federal jurisdiction over Plaintiffs' fourth

9    cause of action."  (*Remand Mot.* 2:10.)  Marubeni is correct.

10        Medivas contends that Marubeni's current remand motion is in reality a motion

11   to reconsider and reverse a key issue that was integral to the Court's previous orders.

12   Medivas is mistaken.

13        The Note Purchase Agreement's arbitration clause, contained in section 10.14

14   of that agreement, states:

15        All disputes and differences which may arise out of or in connection with
          this Agreement, or the breach tehreof, will be settled amicably insofar as
16        possible by means of negotiations among the responsible executive officers
          of the parties. All such disputes and differences which are not settled in
17        this manner within thirty (30) days after the receipt by responsible
          executive officers of either party of written notification from the other
18        party of the existence of a dispute, shall be submitted to arbitration under
          the commercial arbitration rules of the International Chamber of
19        Commerce (the "<u>ICC</u>") for final and binding arbitration.
20

21   (*See Pls.' NOL*, Ex. 1.)  The clause further states that "[a]ll decisions rendered by a

22   majority of the arbitration panel shall be final and binding among the parties . . ." (*Id.*)

23        Additionally, Article 6 Section 3 of the ICC Rules of Arbitration provides as

24   follows:

25        If any party against which a claim has been made . . . raises one or more
          pleas concerning the existence, validity or scope of the arbitration
26        agreement or concerning whether all of the claims made in the arbitration
          may be determined together in a single arbitration, the arbitration shall
27        proceed and any question of jurisdiction or of whether the claims may be
          determined together in that arbitration shall be decided directly by the
28

arbitral tribunal, unless the Secretary General refers the matter to the Court for its decision pursuant to Article 6(4).

ICC RULES OF ARBITRATION ART. 6(3).

In its partial award, the arbitral tribunal decided, "[b]ecause the Voidable Security Claim directly concerns the collateral given under the Security Agreement, it is the view of the Tribunal that such dispute is subject to the Forum Clause and accordingly the Tribunal does not have jurisdiction over this issue." (*See Remand Mot.*, Ex. A [Doc. 44-1], ¶ 185.) While MediVas asserts that this claim directly contradicts this Court's previous finding, it is important to emphasize that the finding was based entirely on this Court's analysis of the allegations in the complaint. In contrast, the arbitral tribunal's finding was made after the submission of evidence and a more fully developed record that allowed them to more accurately determine whether the claim fell exclusively within the scope of the venue provision.

More importantly, Marubeni and MediVas agreed to arbitrate their disputes according to the ICC Rules of Arbitration, and those rules provide for the authority of the tribunal to decide questions of jurisdiction. See ICC RULES OF ARBITRATION ART. 6(3).[3] Accordingly, the tribunal's decision of the threshold jurisdictional issue as to MediVas' fourth cause of action fulfills the terms of both the arbitration clause and this Court's previous orders based on that clause. Because the terms of the arbitration clause have been fulfilled, the Court would vitiate the parties' intentions in agreeing to the ICC Rules of Arbitration if it were to order the fourth cause of action back to arbitration. See Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205, 1210 (9th Cir. 1998) (quoting City of El Cajon v. El Cajon Police Officers' Ass'n, 49 Cal.App.4th 64, 71(1996)) ("Under California contract law, the court must 'endeavor[ ] to effectuate the mutual intent of the parties.' ").

_____

[3] Based on this ICC Rule, it appears this Court could have ordered the entire case to arbitration and allowed the arbitral tribunal to decide which claims were subject to the arbitration clause and venue provision. However, neither party raised this issue in connection with the motion to arbitrate or motion for reconsideration.

The Convention that formed the basis for the Court's jurisdiction over this case applies only to the enforcement of arbitral awards. <u>See</u> Convention, June 10, 1958, 21 U.S.T. 2517.  The terms of the arbitration clause have been fulfilled.  With respect to MediVas' fourth cause of action, there is no potential for future arbitration or future enforcement of an arbitral award in compliance with the Convention.  Therefore, the Convention no longer serves as a source of jurisdiction for this Court to hear that cause of action.  <u>See</u> 21 U.S.T. 2517.  Because the Convention was the sole source of this Court's jurisdiction over MediVas' fourth cause of action, the Court is now without jurisdiction to hear it.  <u>See</u> 9 U.S.C. § 203.

## IV.   CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS** Defendants' motion to remand the fourth cause of action to California Superior Court [Doc. 44].

**IT IS SO ORDERED.**

DATE: April 18, 2014

_____
Hon. Thomas J. Whelan
**United States District Judge**

10cv1001w